GLICKSTEIN, Judge,
concurring in part and dissenting in part.
INTRODUCTION
My opinion is divided into two parts — the Introduction and the Merits.
The introduction has been written primarily because of my concern for the unnecessary delays incurred in this court’s decision making process, which delays have effectively silenced my views on the one issue occasioning en banc consideration; namely, whether we should or should not recede from Allstate Insurance Company v. Gibbs, 340 So.2d 1202, (Fla. 4th DCA (1976), cert, dismissed, 354 So.2d 980 (Fla. 1977).
I use the word “silenced” because the delay in the issuance of the majority opinion in this case prevented the public expression of my views prior to the consideration and determination of the same issue by this state’s highest court in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), which implicitly vitiated this court’s decision in Allstate as well as the decision in Safeco Insurance Company of America v. Campbell, 433 So.2d 25 (Fla. 2d DCA 1983). This court has had a policy of expediting en banc cases since May 1986, which fact should have affected the disposition of this case, the subject of en banc since early 1986. In my view, the delays occasioned here were unwarranted.
The parties and the people of this district were entitled to know the views of every judge here upon the issue at hand, prior to the decision in Martin-Johnson, Inc., just as the supreme court should have been provided the benefit of all of our thoughts. That decision — establishing policy for the entire state — was decided by a vote of four to three. Like most Floridians, I was not aware of its consideration — or impact — until its appearance in Florida Law Weekly. A reading of the earlier one paragraph decision in Martin-Johnson, Inc. v. Savage, 488 So.2d 567 (Fla. 1st DCA 1986), reflects that the situation involved en banc here was not involved there. Consideration here was of a discovery order and the claim upon which the discovery order was founded. If no discovery order had been involved here, certiorari directed solely to review of the motion to dismiss would have surely been denied and the present case would never have been the ultimate subject of en banc consideration. The whole point of my position since 1985, when this case was brought to this court, has been that if we were going to review a discovery order that was substantially related to the validi *1005 ty of the claim underlying the discovery, it was wise from the standpoint of judicial economy to consider them both at one time. I have never advocated anything more nor anything less.
The majority opinion bears the name of Judge Dell but the idea therein as to the Allstate issue is that of Justice Barkett, who expressed it in the opinion she had proposed while she was a member of the original three judge panel on this court. Her proposed opinion, in which Judge Dell joined, would have receded from Allstate. In Martin-Johnson, Inc., Justice Barkett undertook to expand her discussion to include precisely the issue under consideration here. She then implicitly repudiated Allstate and Safeco.
The motion before the trial court in this case was a motion to dismiss, containing several grounds; but the only relevant portion thereof is that which was directed to the claim for punitive damages. We know that a claim for punitive damages alone would have been insufficient to withstand a motion to dismiss a single count complaint or a motion to strike a count which seeks only punitive damages. A judgment for punitive damages alone, without compensatory or nominal damages, cannot stand. See Canda v. Holy Cross Hospital, Inc., 427 So.2d 803 (Fla. 4th DCA 1983), and cases cited therein. Count II of the cross-claim here sought only punitive damages. As in Carida, I would consider the two counts as one because of that deficiency. However, it appeared plain to me in 1985— as well as now — that there was no basis in the following allegations to support a claim for punitive damages:
CROSS-CLAIM
COUNT I
(16)For its Cross-Claim against the Defendant Hartford Accident & Indemnity Company, Defendant-Counterclaimant and Cross-Claimant U.S.C.P. Co. incorporates Paragraphs (1) through (5) and Paragraph (7) of its Counterclaim as if fully restated herein.
(17) Hartford issued to U.S.C.P. the insurance policy attached hereto and made a part hereof as Exhibit 1.
(18) Prior to December 8,1983, Hartford refused to pay U.S.C.P. any sum due under its policy of insurance. On December 8, 1983 Hartford paid U.S.C.P. the sum of $502,636.55 which it represented was its entire obligation under its policy. U.S.C.P., with the agreement of Hartford, accepted said sum under protest reserving to U.S.C.P. its rights to recover from Hartford any additional amounts owed.
(19) The amount paid by Hartford on December 8, 1983 was less than the full amount due U.S.C.P. under the “Coverage” and “Supplementary Payments” provisions of the Hartford policy, and did not compensate U.S.C.P. for the damages it incurred in having to pay that part of the Final Judgment for which it was entitled to indemnification from Hartford under its policy.
(20) As a result of Hartford’s failure to honor its insurance policy, U.S.C.P. has suffered the loss of use of its money as stated herein and incurred legal and related expenses.
COUNT II
(21) U.S.C.P. incorporates Paragraphs (16) through (20) of Count I of its Cross-Claim as if fully restated herein.
(22) The Defendant Hartford owed a duty to its insured U.S.C.P. to defend it in good faith in the Bould lawsuit; to pay U.S.C.P. all sums due under its policy of insurance; and to fully protect U.S.C.P.’s interests in this matter.
(23) Hartford has failed to comply with its aforesaid duties, has no reasonable basis for such failure, and has acted in bad faith in its dealings as an insurer with its insured.
(24) As a result of Hartford’s bad faith, U.S.C.P. was required to pay all of the $997,000 Final Judgment on November 18,1977; it still has not been fully indemnified by Hartford under its insurance policy; and it has been required to take *1006 this legal action to enforce its rights against Hartford.
While the language in previous cases about a “cause of action” for punitive damages may be loose, the clear import is that you cannot legitimately “claim” them in this type of case without more than was alleged here. If we could legitimately consider the discovery order which might be inexorably tied to the “claim”, then why not review— as a matter of judicial economy — the order which not only permitted the discovery but also upheld the sufficiency of the allegations?
Given the supreme court’s recent decision in Martin-Joknson, Inc., my views on the merits are now moot. What is relevant is my being prevented from expressing my value judgment publicly before now as a result of the delays effected here.
The subject petition for certiorari was perfected on July 8, 1985. My proposed opinion which circulated to the two other members of the merits panel on August 20, 1985, would have granted the petition, quashed the discovery order and reaffirmed this court’s decision in Allstate Insurance Company v. Gibbs. After the other two panelists wished to recede therefrom, it was decided, by majority vote of the judges on this court at the time, that this case merited en banc consideration. Due to what I consider to have been unwarranted delays, the final version of the majority en banc opinion in this case was not circulated until August 3, 1987 — more than two years after the petition for writ of certiorari was perfected.
THE MERITS
Because of the unreasonable delays, there is little, if anything, left after Martin-Johnson, Inc. for me to say upon the question of our review of the motion to dismiss. When I wrote the draft opinion herein two years ago, on the authority of both Allstate and Safeco, quashing the order which required petitioner to answer certain interrogatories and produce other materials bearing on the cross-claim, I believed then and still do now that the cross-claim fails to state a claim for punitive damages under Florida law. I reemphasized in the 1985 draft opinion that as a general rule, denials of partial summary judgment or motions to dismiss are not reviewable by certiorari.
In researching the case law while en banc, members of the court encountered two decisions of this court which are disconcerting. These are Canadian Home Insurance Company v. Norris, 471 So.2d 217 (Fla. 4th DCA 1985), and Home Insurance Company of Illinois v. Sentry Insurance A Mutual Company, 461 So.2d 1038 (Fla. 4th DCA 1985). To the extent that those opinions appear to convey that there is but one criterion for granting certiorari — departure from the essential requirements of law — and overlook the further requirement of harm to the petitioner throughout the remainder of the proceeding that cannot be remedied on plenary appeal, I, too, would recede from those opinions.
Finally, there are a number of things about Doerschuck v. Doerschuck, 481 So. 2d 1317 (Fla. 4th DCA 1986) and the two last cited cases worth mentioning. First, Doerschuck came here as an appeal from two nonfinal orders, one which denied a motion to dismiss without prejudice and another which granted a motion to intervene. Second, because both orders therein were nonappealable, we considered the matter as a petition for certiorari. Third, there was a citation in the special concurrence at the end of the last sentence thereof which was omitted in the quote by the majority opinion herein; namely, Bowl America Florida, Inc. v. Schmidt, 386 So. 2d 1203 (Fla. 5th DCA 1980). Fourth, the special concurrence continued therein with a final paragraph, which is — because of Martin-Johnson, Inc. — very relevant here:
I write solely to point out that all this can be avoided if the trial judge will reconsider her denial of the motion to dismiss, which she can do for good reasons when her orders are not final. See Motorola Communications and Electronics, Inc. v. National Patient Aids, Inc., 427 So.2d 1042,1042 & n. 1 (Fla. 4th DCA 1983). Counsel in other cases *1007 should not anticipate similar suggestions in every case from this writer; but the tidal wave of litigation described by Judge Irving Kaufman in a speech which we quoted in Chema v. Chema, 427 So.2d 395, 396 n. 2 (Fla. 4th DCA 1983), coupled with the obvious and needless error here, compels this expression by concurrence.
Fifth, and perhaps most importantly, unlike the present case and Allstate, no discovery order, properly reviewable by certiorari, was involved in Doerschuck, Canadian Home Insurance Company or Home Insurance Company of Illinois. Each one of those cases involved the denial of a motion to dismiss. The present case and Allstate came here with two considerations simultaneously, the first of which was the discovery order. As previously stated, there is a valid economic reason, judicially speaking, to consider these cases in a different manner — for the benefit of both the parties and the system.
Finally, the discovery order does not conform with a series of recent decisions from this court. See Cotton States Mutual Insurance Company v. Turtle Reef Associates, Inc., 444 So.2d 595 (Fla. 4th DCA
1984), and Selected Risks Insurance Company v. White, 447 So.2d 455 (Fla. 4th DCA 1984). See also Airocar, Inc. v. Goldman, 474 So.2d 269 (Fla. 4th DCA
1985). See the discussion of that case and Turtle Reef vis a vis the conflicting decision in Florida Cypress Gardens, Inc. v. Murphy, 471 So.2d 203 (Fla. 2d DCA 1985), which appears in the August 1985 issue of the Journal of the Academy of Florida Trial Lawyers at 11-12. See also Travelers Insurance Company v. Habelow, 405 So.2d 1361 (Fla. 5th DCA 1981), and Agri-Business, Inc. v. Bridges, 397 So.2d 394 (Fla. 1st DCA 1981).